**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Red Carpet Studios,

       Plaintiff,                                    Case No. 1:12cv501

       v.                                            Judge Michael R. Barrett

Midwest Trading Group, Inc., *et al.,*

       Defendants.

**OPINION & ORDER**

This matter is before the Court upon Defendant Midwest Trading Group, Inc.'s Motion to Dismiss. (Doc. 12). Plaintiff Red Carpet Studios ("Red Carpet") has filed a Response in Opposition (Doc. 15), and MTG has filed a Reply (Doc. 20). Following the completion of discovery on the issue of personal jurisdiction, the parties filed supplemental briefs. (Docs. 41, 42).

**I.    BACKGROUND**

This is a patent infringement case. Plaintiff Red Carpet Studios ("Red Carpet") alleges that Defendant Midwest Trading Group Inc. ("MTG"), along with Defendants Walgreen Company ("Walgreens") and CVS Pharmacy Inc. ("CVS"), have sold or offered to sell infringing products to which Red Carpet has a patent, U.S. Design Patent No. D487,034. (Doc. 1). MTG has filed its Motion To Dismiss under Federal Rule 12(b)(6) based on lack of personal jurisdiction.

It is undisputed that MTG is an Illinois corporation with no sales office or personnel in Ohio. MTG maintains that Walgreens and CVS ("Retail Defendants") took

possession of the alleged infringing products ("Solar Spinners") from MTG in China, and that MTG did not ship the Solar Spinners to Ohio.[1] However, MTG does not dispute that the Retail Defendants have sold Solar Spinners in their stores located in Ohio. MTG also does not dispute that the Solar Spinner appears on its website, but explains that its website is for catalog purposes only and that it does not allow visitors to make purchases.

## II. ANALYSIS

Federal Circuit law governs personal jurisdiction issues over out-of-state defendants in patent cases. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998); *Imperial Prods. Inc. v. Rice Endura Prods.*, 109 F. Supp. 2d 809, 810 (S.D. Ohio 2000). As this Court has explained:

> Where the parties have conducted discovery on the issue, the plaintiff must prove personal jurisdiction by a preponderance of the evidence. *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed.Cir. 2001). If the parties have not conducted discovery on jurisdictional issues, the plaintiff need only make a prima facie showing that personal jurisdiction exists, with the court construing the pleadings and affidavits in the light most favorable to the plaintiff. *Silent Drive, Inc. v. Strong Ind., Inc.*, 326 F.3d 1194, 1201 (Fed.Cir. 2003).

*Logan Farms v. HBH, Inc. DE*, 282 F. Supp. 2d 776, 791 (S.D. Ohio 2003). In this case, the parties conducted discovery on the issue of personal jurisdiction, and therefore Red Carpet must prove personal jurisdiction by a preponderance of the evidence.

A two-step analysis is used to determine if there is personal jurisdiction over a non-consenting defendant. First, the defendant must be amendable to process under the forum state's long-arm statute. *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354

---

[1] MTG explains that CVS and Walgreens took delivery of their orders of Solar Spinners in China and arranged to have the Solar Spinners shipped to the United States by their respective Chinese custom houses. (Doc. 20-1, Rathish Varijakshan Aff., ¶ 5).

2

(Fed. Cir. 2002). Second, the defendant's activities within the forum state must satisfy the minimum contacts requirement of due process. *Id.*

However, before reaching this analysis, the Court must first address the argument raised by Red Carpet that MTG has waived its right to challenge personal jurisdiction.

### A. <u>Waiver</u>

Red Carpet argues that MTG has been active in the substantive merits of this case from the outset, and therefore MTG has waived any affirmative defense based upon personal jurisdiction. Red Carpet points out that the Retail Defendants disclosed that they have consulted with counsel for MTG and that MTG hired the attorney who is representing the Retail Defendants. MTG responds that it is contractually obligated to indemnify and provide counsel to defend the Retail Defendants. Counsel for MTG has submitted his affidavit which states that he has only had general discussions about the substantive matters in this case.

The Sixth Circuit has instructed that "[t]o waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (quoting *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)).

Counsel for MTG has been clear about its limited participation in this matter. (See e.g., Doc. 17). To date, MTG has not indicated that it intends to defend this suit on the merits in this Court. While MTG is contractually obligated to provide a defense to

the Retail Defendants, the Court does not find that this obligation, without more, has resulted in a waiver of MTG's affirmative defense based upon personal jurisdiction.

The Court will now turn to the issue of personal jurisdiction.

### B. Ohio's Long-arm Statute

Ohio's long-arm statute must be interpreted in accordance with Ohio precedent. *Graphic Controls Corp. v. Utah Med. Prods.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998). As the Federal Circuit has recognized, Ohio's long-arm statute does not reach the limits of the due process clause. *Hildebrand*, 279 F.3d at 1354 (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994)). Therefore, if Ohio's long-arm statute does not provide a basis for personal jurisdiction over MTG, this Court does not need to address whether personal jurisdiction would comport with due process. *General Acquisition, Inc. v. Gencorp, Inc.*, 766 F. Supp. 1460, 1485 (S.D. Ohio 1990).

Red Carpet argues that MTG is subject to personal jurisdiction under three provisions of Ohio's long-arm statute: Section 2307.382(A)(3), Section 2307.382(A)(4) and Section 2307.382(A)(6).

#### a. Ohio Rev. Code Section 2307.382(A)(3)

Ohio Rev. Code Section 2307.382(A)(3) provides that an Ohio court may exercise personal jurisdiction over a defendant "[c]ausing tortious injury by an act or omission in this state." Patent infringement is a tort created by federal statute, and the injury from the tort occurs where the product is sold or offered to be sold. 35 U.S.C. § 271(a); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994); *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005). Red Carpet argues that MTG has offered to sell the infringing products to Ohio

consumers through its website, and is therefore amendable to service under Section (A)(3) of Ohio's long-arm statute.

To support its offer to sell theory, Red Carpet urges this Court to follow the Federal Circuit Court's decision in *3D Sys. v. Aarotech Labs., Inc.*, 160 F.3d 1373 (Fed. Cir. 1998). In *3D Systems*, the court found that there was personal jurisdiction over a West Virginia defendant in California, because the defendant had offered to sell its product to California residents. *Id*. at 1375. The defendant sent eight letters containing the price and product descriptions of their merchandise to four different California companies, and sent promotional materials – including videos, sample parts, and letters – to eighteen potential California buyers. *Id*. at 1376. However, the court was applying California's long-arm statue, which is coextensive with the limits of due process. *Id*. at 1377. For purposes of this Court's analysis under Ohio Revised Code Section 2307.382(A)(3), this Court finds *3D Systems* inapplicable.

Another district court has recently explained that "[t]o satisfy (A)(3), both the tortious act and the injury must occur in Ohio." *Canplas Indus., Ltd. v. InterVac Design Corp.*, 1:13 CV 1565, 2013 WL 6211989, *4 (N.D. Ohio Nov. 22, 2013) (citing *Gor–Vue Corp. v. Hornell Elektrooptik AB*, 634 F.Supp. 535, 537 (N.D.Ohio 1986) (finding personal jurisdiction in patent case where defendant sold offending products in the district and plaintiff also conducted business there)). The court in *Canplas* rejected the argument that merely offering the infringing product for sale on a website would support jurisdiction under Section (A)(3) of Ohio's long-arm statute:

> Plaintiff contends that because the Accused Product could have been bought through defendant's website, defendant has also committed a tortious act in Ohio. Plaintiff has again cited no case that supports its contention that offering an allegedly infringing product for sale via a

5

> website, when none of the products has actually been sold or shipped to this district, can substantiate a finding of personal jurisdiction under the tortious injury provision of Ohio's long-arm statute. Under Federal Circuit case law, the situs of the injury of selling an allegedly infringing product is the place where the sale is made. *North American Philips*, 35 F.3d at 1578–1579. Here, plaintiff has not alleged that any sale of the Accused Product occurred in the Northern District of Ohio. Therefore, a tortious injury did not occur in Ohio. This Court, therefore, cannot exercise personal jurisdiction over defendant InterVac pursuant to § 2307.382(A)(3) of Ohio's long-arm statute.

2013 WL 6211989, *4.

MTG acknowledges that the Solar Spinner appears on its website with a product description and price. MTG explains that while visitors to the website are able to place an order for the Solar Spinner, those orders are not processed. (Doc. 20-1, Farooq Hameed Aff. ¶ 3). Instead, the website generates an automatic reply that the purchase is "processing" or the Solar Spinner is "out of stock." (Id., ¶¶ 4-5). Because this Court does not find these facts distinguishable from *Canplas*, Red Carpet cannot rely on Section (A)(3) of Ohio's long-arm statute to establish personal jurisdiction over MTG.

### b. Ohio Rev. Code Section 2307.382(A)(4)

Ohio Revised Code § 2307.382(A)(4) provides that an Ohio court may exercise personal jurisdiction over a defendant "[c]ausing tortious injury in this state by an act or omission outside the state, if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . ." Red Carpet relies on MTG's sales invoices for the years 2011 through 2013 to support its claim that MTG regularly did business in Ohio, engaged in a persistent course of conduct in Ohio and derives substantial revenue from the sale of its goods in Ohio.

The Federal Circuit has concluded that in interpreting Section (A)(4), Ohio courts

6

have not required direct contact with the state. *Schwanger v. Munchkin, Inc.*, 1999 WL 820449, *3 (Fed. Cir. 1999). Therefore, in *Schwanger,* the Federal Circuit found that Section (A)(4) was applicable even though the defendant was a California corporation which sold the allegedly infringing product to retailers to sell in their stores in Ohio, and the defendant did not make any sales to Ohio residents itself. *Id.* at *1, *3; *see also Dayton Superior Corp. v. Gen. Technologies, Inc.*, 3:09CV00114, 2009 WL 4250034 * 4 (S.D. Ohio Nov. 20, 2009) (concluding that even though the defendant never sold one allegedly infringing product in Ohio and has no presence in Ohio, the plaintiff made a *prima facie* showing that the defendant caused tortious injury in Ohio by regularly selling its allegedly infringing products to third-party distributors, who in turn resell those products in Ohio). Therefore, by selling Solar Spinners to the Retail Defendants for sale in their stores in Ohio, MTG caused tortious injury in Ohio.

MTG's invoices show that between 2001 and 2013, MTG generated 861 invoices which include either a "Ship to" and/or "Bill to" address in Ohio. (Doc. 41-1, Paul Linden Dec. ¶¶ 4, 6). These invoices show that MTG's revenue from its commercial activity in Ohio was $2,954,329 in 2011 and $6,340,145 in 2012. (Id., ¶ 8). The 2011 revenue equals approximately 16% of MTG's total revenue from its commercial activity nationwide for that year. (Id.) The 2012 revenue equals approximately 21% of MTG's revenue from its commercial activity nationwide for that year. (Id.) MTG's sales revenues dropped significantly in 2013, and only constituted .31% of its commercial activity nationwide for that year. (Id.)

MTG argues that this Court should not consider sales of other goods which did not cause tortious injury. However, this Court has held that the defendant's non-

7

infringing sales in Ohio may be considered on the issue of whether it derives "substantial revenue" from the sale of goods in the state  *Imperial Products, Inc. v. Endura Products, Inc.*, 109 F. Supp. 2d 809, 814 (S.D. Ohio 2000). Moreover, Ohio courts have found that "substantial revenue" is a flexible term, and there is "considerable latitude in determining what constitutes substantial revenue." *Hoover Co. v. Robeson Indus. Corp.*, 904 F. Supp. 671, 674 (N.D. Ohio 1995). The Court notes that in 2000, this Court concluded that $2,000,000 in gross sales from Ohio buyers constituted substantial revenue. 109 F.Supp. 2d at 815. When Red Carpet filed this lawsuit in 2012, MTG was generating over $6,000,000 in sales. Therefore, the Court concludes that MTG derived substantial revenue from its commercial activity in Ohio.

Red Carpet has shown by a preponderance of the evidence that personal jurisdiction exists under Section (A)(4). Having determined that Ohio's long-arm statute authorizes the exercise of personal jurisdiction over MTG, the remaining question is whether the Court may do so consistent with federal due process.[2] However, before the Court reaches that question, for the sake of completeness, the Court will analyze whether personal jurisdiction is authorized under Section (A)(6) of Ohio's long-arm statute.

### c. Ohio Rev. Code Section 2307.382(A)(6)

Ohio Rev. Code § 2307.382(A)(6) provides that an Ohio court may exercise personal jurisdiction over a defendant "[c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in

---

[2] Because the Court has determined that specific jurisdiction exists under Ohio's long-arm statute, the Court finds it unnecessary to reach the issue of whether Ohio recognizes general jurisdiction.

this state." Red Carpet asserts that because it marks its products with a patent number, MTG purposely violated Red Carpet's patent rights with a reasonable expectation that patent infringement would occur.

Red Carpet relies on Ohio caselaw that has found Section (A)(6) jurisdiction over an out-of-state defendant who committed conversion of an Ohio corporation's stock. *See Herbruck v. LaJolla Capital*, No 19586, 200 WL 1420282, *3 (Ohio Ct. App. Sept. 27, 2000). Red Carpet alleges that MTG's infringement of Red Carpet's patent right constitutes a property violation similar to the conversion of stock, and that MTG's conduct therefore satisfies Section (A)(6).

Section (A)(6) requires that the defendant cause "tortious injury in this state." As explained above, in patent infringement, the injury is where the infringing sale occurs. *Beverly Hills Fan Co.*, 21 F.3d at 1571. The focus is on the defendant's conduct, not where the plaintiff resides. *Id.* Because the tortious injury occur did not occur in Ohio, MTG is not subject to jurisdiction under Section (A)(6).

### C. Due Process

Whether specific jurisdiction comports with due process is a three-prong test: (1) the defendant must purposely direct its activities at the forum state, (2) the claim must arise out of or relate to the defendant's activities in the forum state, and (3) jurisdiction over the defendant must be fair and reasonable. *Genetic Implant Sys. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997).

In *Beverly Hills*, the Federal Circuit found that the due process requirements had been satisfied where an out-of-state defendant purposely shipped the infringing product into the forum state through intermediaries. 21 F.3d. at 1563. The plaintiffs introduced

9

evidence that the defendant's intermediary currently had at least fifty-two units of the infringing product for sale in the forum state. *Id.* at 1564. The court stated that the exercise of personal jurisdiction was proper because: "defendants, acting in consort, placed the [infringing product] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Id.* at 1566.

Relying on *Beverly Hills*, the Federal Circuit in *Schwanger* found that the due process requirements had been satisfied in the case before it:

> . . . the allegations here are that Munchkin purposefully shipped the accused product into Ohio through Wal-Mart, an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is required to establish the purposeful minimum contacts necessary for personal jurisdiction.

1999 WL 820449, at *8.

The Federal Circuit has repeatedly refused to choose between the Justice Brennan and Justice O'Connor versions of the "stream of commerce" theory of personal jurisdiction set forth in *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987). *See AFTG–TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1362 (Fed.Cir. 2012). These two theories are as follows: to establish minimum contacts, Justice Brennan, joined by three other justices, concluded that personal jurisdiction could be exercised over a defendant who placed goods into the stream of commerce so long as the defendant could foresee the goods might end up in the forum state. *See Beverly Hills*, 21 F.3d at 1566 (citing *Asahi*, 480 U.S. at 117). Justice O'Connor, also joined by three other justices, concluded there must be "more than the

10

mere act of placing a product in the stream of commerce," and included the additional requirement of "'an action of the defendant purposefully directed toward the forum State.'" *Id.* (quoting *Asahi*, 480 U.S. at 112).

This Court finds that Red Carpet has established minimum contacts under either the "stream-of-commerce" or "stream-of-commerce-plus" theory. MTG shipped the Solar Spinners into Ohio through an established distribution channel, with the expectation that the Solar Spinners would be purchased from Walgreens and CVS stores in Ohio. (See Doc. 15-4, PAGEID# 138-153, PAGEID# 168-175). Red Carpet has presented evidence that Solar Spinners were in fact purchased from Walgreens and CVS stores located in Ohio. (Doc. 15-1, Sharon Studer Dec. ¶ 3; Doc. 15-2, Gregory Garrison Dec. ¶3).

In addition, Red Carpet has presented evidence that MTG has purposely directed its sales activities at residents of Ohio, both through the 2011-2013 invoices and the sales of Solar Spinners to the Retail Defendants. *Accord Imperial Products, Inc.*, 109 F. Supp. 2d at 815 (noting for purposes of the federal due process analysis that the record contains sales records which indicate that the defendant sold more than $2,000,000.00 worth of goods to buyers in Ohio over a three-year period) (citing *Genetic Implant Systems, Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458 (Fed.Cir.1997) (concluding that various "substantial activities" in the forum state are relevant to the minimum contacts analysis, even if not directly related to the underlying cause of action, because "it is jurisdiction that is at issue, not liability for patent infringement")).

While Red Carpet also argues that MTG's website evidences minimum contacts with Ohio, the Federal Circuit has found that a passive website is insufficient to

establish minimum contacts for the purpose of due process. *See*, *e.g,*, *Marynard v. Philadelphia Cervical Collar Co.*, 18 F. App'x 814, 816 (Fed. Cir. 2001) (no minimum contacts where the defendant simply created a general access web page to provide information, did not contact users in the forum state, did not allow users to enter into contractual agreements with the company, and did not target its advertisements towards residents in the forum state).

If all other requirements have been satisfied, only in a "rare situation" will the exercise of personal jurisdiction over an out-of-state defendant be unfair or unreasonable. *Imperial Products*, 109 F. Supp. 2d at 816. "The test of unreasonableness is a multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events." *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The Court notes that MTG knew the destination of its products, and its conduct and connections with the forum state were such that it should have reasonably have anticipated being brought into court there. In addition, Ohio has a substantial interest in discouraging injury within its borders, and this interest encompasses design patent infringement. *Beverly Hills Fan Co.*, 21 F.3d at 1568.

Therefore, the Court is satisfied that the exercise of personal jurisdiction over MTG comports with due process.

### III. <u>CONCLUSION</u>

Based on the foregoing, Defendant Midwest Trading Group, Inc.'s Motion to Dismiss

(Doc. 12) is **DENIED**.

    **IT IS SO ORDERED.**

                                              */s/ Michael R. Barrett*
                                              JUDGE MICHAEL R. BARRETT