**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Red Carpet Studios,

        Plaintiff,                            Case No.  1:12cv501

        v.                                    Judge Michael R. Barrett

Midwest Trading Group, Inc., *et al.,*

        Defendants.

### OPINION & ORDER

      This matter is before the Court upon Plaintiff Red Carpet Studio's Motion to Dismiss the Amended Complaint. (Doc. 62).[1] Defendant Midwest Trading Group, Inc. filed a Response (Doc. 63) and Plaintiff filed a Reply (Doc. 64). Defendant was granted leave to file a Surreply. (Doc. 73). Plaintiff filed a Notice of Supplemental Authority. (Doc. 75).

**I.**     **BACKGROUND**

      This matter began with a patent infringement case. Plaintiff Red Carpet Studios ("Red Carpet") alleges that Defendant Midwest Trading Group Inc. ("MTG"), along with Defendants Walgreen Company ("Walgreens") and CVS Pharmacy Inc. ("CVS"), have sold or offered to sell infringing products to which Red Carpet has a patent, U.S. Design Patent No. D487,034 ("the '034 Patent"). (Doc. 1).

      In a separate, later-filed case, MTG filed a "Complaint for Correction of Inventorship" claiming that MTG was the successor-in-interest to the intellectual

---

[1]As explained herein, in the original case, Red Carpet is the plaintiff and MTG is the defendant. While those roles are reversed in the case filed by MTG, the Court will refer to Red Carpet as "Plaintiff" because the original case was consolidated with the case filed by MTG.

property rights of Neal Sater.  *See Midwest Trading Group, Inc. v. Red Carpet Studios Division of Source Advantage*, Case No. 1:15-cv-524.  In that case, MTG claims that Sater is an unnamed inventor of the '034 Patent.  MTG explains that the '034 Patent lists as the sole inventor and Lach assigned his rights to Red Carpet in December of 2002.

In Count One of its Amended Complaint filed in 1:15-cv-524, MTG seeks have Sater included as an inventor of the '034 Patent.  In Count Two, MTG seeks to have the named inventor, Bob Lach, removed as a named inventor.  In Count Three, MTG brings a claim of inequitable conduct based on the failure of Red Carpet to acknowledge Sater's contribution to the '034 Patent to the Patent Office.  In Count Four, MTG brings a claim of unjust enrichment against Red Carpet.  MTG claims it is entitled to all of the profits from the sales of products incorporating the design of the '034 Patent which were sold by Red Carpet.  This Court consolidated MTG's case with Red Carpet's patent infringement case.  (Doc. 61).

Red Carpet seeks to dismiss MTG's claims under Federal Rule of Civil Procedure 12 based on defect in title, lack of coherent evidence, res judicata, laches and champerty.

**II.    ANALYSIS**

**A.  Standard of Review**

**1.   Failure to state a claim under Rule 12(b)(6)**

In reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable

inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).   However, legal conclusions conveyed as factual allegations do not to be accepted as true, rather the reviewing court is allowed to draw on its own judicial experience and common sense in determining whether or not the pleader can obtain any relief based on the purported facts.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-950 (2009).

### 2.  Lack of subject matter jurisdiction under Rule 12(b)(1)

"Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) 'come in two varieties: a facial attack or a factual attack.'"  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (quoting *Gentek Bldg. Prod., Inc. v. Sherwin–Williams C*o., 491 F.3d 320, 330 (6th Cir. 2007)).   A facial attack challenges the sufficiency of the pleading and goes to whether or not the plaintiff laid a sufficient basis for subject matter jurisdiction.  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).   All of the allegations in a facial analysis must be taken as true, like that of a motion under Rule 12(b)(6).  *Carrier*, 673 F.3d at 440; *see also Lovely v. United States*, 570 F.3d 778, 781 (6th Cir. 2009), *cert. denied*, 558 U.S. 1111 (2010).   A factual attack, on the other hand, challenges the actual existence of subject matter jurisdiction. *Cartwright*, 751 F.3d at 759.   In a factual attack, the court may "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction."  *Carrier*, 673 F.3d at 440; *see also Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (explaining that "the court is empowered to resolve factual disputes

when subject matter jurisdiction is challenged."). "Plaintiff bears the burden of establishing that subject matter jurisdiction exists." *Cartwright*, 751 F.3d at 760.

When faced with motions based on both Rules 12(b)(1) and (6), a court must address subject matter first, because the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction. *Moir*, 895 F.2d at 269 (citing *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)) ("The Court will consider the 12(b)(1) motion first, as the 12(b)(6) challenge becomes moot if subject matter jurisdiction is lacking.")). Accordingly, the Court will first turn to the issue of standing, which goes to this Court's subject matter jurisdiction. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007) ("a plaintiff must possess both constitutional and statutory standing in order for a federal court to have jurisdiction.").

### B. Standing

MTG brings its claims to correct inventorship pursuant to 35 U.S.C. § 256, which "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1324 (Fed. Cir. 2009) (quoting *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997)).

Red Carpet argues that MTG does not have standing to bring the claims based on the rights purportedly acquired from Sater because Sater did not own those rights. Red Carpet acknowledges that Sater designed a three-piece helix product, which he copyrighted. That copyright was the subject of an earlier lawsuit in this Court between Red Carpet and Sater. *See Red Carpet v. Sater*, Case No. 1:03-cv-00051 ("Case 51"). In Case 51, Red Carpet sought declaratory judgment that Red Carpet's four-piece helix

product—which is covered by the '034 Patent—did not infringe Sater's three-piece helix product.  Red Carpet relies on previous rulings of this Court in Case 51 which indicate that Sater transferred his intellectual property rights to another entity: Wind Wonders, LLC.  (See *Red Carpet v. Sater*, Case No. 1:03-cv-00051, Doc. 40).

MTG responds that it has standing because it alleged in the Amended Complaint that "MTG is the successor-in-interest to SATER's patent rights, having acquired all such rights by assignment."  (Case. No. 1:15cv524, Doc. 6).  A copy of the assignment agreement between Sater and MTG has been made a part of the record.  (Case. No. 1:15cv524, Doc. 7-2, PAGEID 73-74).  The agreement is dated June 12, 2015, which is after the litigation between Midwest and Red Carpet commenced.  MTG explains that in the context of a Rule 12 motion, these allegations and the assignment agreement are sufficient to show that MTG is the owner of Sater's patent rights.  However, Red Carpet is not questioning the assignment agreement itself, but is questioning whether Sater had any rights to assign.

To begin, it is important to note that questions of patent ownership are distinct from questions of inventorship.  *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1465 (Fed. Cir. 1998) (citing *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248, 26 USPQ2d 1572, 1582 (Fed. Cir. 1993)).[2]  If a plaintiff lacks an ownership interest in a

---

[2]As the Federal Circuit has explained:

> although the act of invention itself vests an inventor with a common law or "natural" right to make, use and sell his or her invention absent conflicting patent rights in others (and in certain circumstances, may similarly vest such rights in an employer of the inventor), a patent on that invention is something more.  A patent in effect enlarges the natural right, adding to it the right to exclude others from making, using or selling the patented invention.  *See Six Wheel Corp. v. Sterling Motor Truck Co.*, 50 F.2d 568, 571 (9th Cir. 1931).

patent, or will not receive any other financial or personal rewards from a declaration of inventorship, that plaintiff does not have standing to sue under Section 256. *See Larson v. Correct Craft, Inc.,* 569 F.3d 1319, 1326 (Fed. Cir. 2009); *Chou v. Univ. of Chicago,* 254 F.3d 1347, 1358-59 (Fed. Cir. 2001); *see also Shukh v. Seagate Tech., LLC,* 803 F.3d 659, 663 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2512 (2016) (standing demonstrated where alleged reputational injury likely has an economic component). Accordingly, "[w]hen the owner of a patent assigns away all rights to the patent, neither he nor his later assignee has a 'concrete financial interest in the patent' that would support standing in a correction of inventorship action." *Trireme Med., LLC v. AngioScore, Inc.*, 812 F.3d 1050, 1053 (Fed. Cir. 2016) (citing *Chou*, 254 F.3d at 1359 and *Larson*, 569 F.3d at 1326-27).

There was some indication in Case 51 that Sater transferred his intellectual property rights to Wind Wonders, LLC. During a motion hearing in that case, this Court engaged in the following discussion with counsel for Sater about the ownership of the copyrights at issue:

> Well, Mr. Joseph, if you want to move to add Wind Wonders as a party to this lawsuit, you may do so, but you will have to do that in writing and you will have to produce the appropriate supporting documentation. At this point, I have nothing before me to indicate that Mr. Sater owns 85 percent of Wind Wonders, or that he has the authority to represent Wind Wonders and to join Wind Wonders as a party. You have conceded that 15 percent of Wind Wonders – even if I accept just the verbal representations -- 15 percent is owned by the employees, that Wind Wonders is a legal entity that can sue and be sued under California law, and that there is a verbal, exclusive license granted to Wind Wonders which makes Wind Wonders the entity that can sue to enforce the copyrights in question here. So, we are lacking an essential party in terms of, at the very least, entitlement to a preliminary injunction. So, on that basis alone, I will deny the motion for preliminary injunction which the defendant has filed and we need not adduce any testimony on that at this time.

*Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578 (Fed. Cir. 1991).

(*Red Carpet v. Sater*, Case No. 1:03-cv-00051, Doc. 42, PAGED ID #352-353).

The Court concludes that this ruling is insufficient to establish that Sater assigned any patent rights he may have had to Wind Wonders so that MTG lacks standing to bring its claims to correct inventorship under 35 U.S.C. § 256.

### C. 35 U.S.C. § 256

The Court will now turn to Red Carpet's argument that MTG has failed to state a claim under 35 U.S.C. § 256.

"Patent issuance creates a presumption that the named inventors are the true and only inventors." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (citing *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed.Cir.), *cert. denied*, 520 U.S. 1277, 117 S.Ct. 2459, 138 L.Ed.2d 216 (1997)).

Section 256 provides a mechanism to correct two types of inventorship errors: misjoinder and nonjoinder. *Fina Tech., Inc., v. Ewen*, 265 F.3d 1325, 1328 (Fed.Cir. 2001); *Stark v. Advanced Magnetics, Inc. et al.*, 119 F.3d 1551, 1553 (Fed.Cir. 1997). Misjoinder occurs when a person who is not an inventor is mistakenly listed as an inventor. *Stark*, 119 F.3d at 1553. Nonjoinder occurs when a person who is an inventor mistakenly has not been listed as such where "the error [does not] involve any deceptive intention by the nonjoined inventor." *Id.*

To establish co-inventorship under Section 256, a plaintiff must prove "some quantum of collaboration" and that he made a "contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed.Cir. 2004). As the Federal Circuit has explained: "the alleged joint

inventor seeking to be listed on a patent must demonstrate that his labors were conjoined with the efforts of the named inventors." *Id.* Joint inventorship "can only arise when collaboration or concerted effort occurs—that is, when the inventors have some open line of communication during or in temporal proximity to their inventive efforts." *Id.*

Similarly, "district courts have not allowed substitution under section 256 where the parties have not collaborated on the subject matter of the patents at issue." *Rubin v. Gen. Hosp. Corp.*, No. CIV.A. 09-10040-DJC, 2011 WL 1625024, at *12 (D. Mass. Apr. 28, 2011), *aff'd*, 523 F. App'x 719 (Fed. Cir. 2013) (citing *Maxwell v. Stanley Works*, No. 3:06–0201, 2006 WL 1967012, at *2, 4–5 (M.D.Tenn. July 11, 2006) (substitution impermissible where plaintiff claimed he was the original inventor of a wrench after a patent was issued to defendant for the same wrench and plaintiff and named inventor neither communicated nor collaborated with one another); *Rawlplug Co., Inc. v. Hilti Aktiengesellschaft*, 777 F.Supp. 240, 242–43 (S.D.N.Y.1991) (substitution impermissible where plaintiff claimed to be the sole and original inventor of a device later patented by another company with whom plaintiff had no contact but plaintiff alleges received the information concerning the device from plaintiff's former employee).

MTG alleges in the Amended Complaint, "[a]s a result of his design work, SATER acquired certain intellectual property rights, including patent rights." (Doc. 6, ¶ 5). MTG alleges that "SATER has a significant role in the conception of claimed subject matter of the '034 patent" and that his "conceptual role is sufficient to qualify him as an inventor under 35 U.S.C. § 116." (Doc. 6, ¶¶ 9, 10). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129

8

S.Ct. at 1949.  MTG's complaint does not speak to any communication or collaboration, except one reference to "a significant prior business relationship" between Red Carpet and Sater.  (Doc. 6, ¶ 12).  The Court finds that MTG's allegations are insufficient to state a claim.

Moreover, the Federal Circuit has held that "a delay of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches."  *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1358 (Fed. Cir. 2008) (quoting *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1163 (Fed.Cir. 1993)).  There is no dispute that Sater knew of the issuance of the '034 Patent during the course of the Case 51 proceedings.  The issuance of the '034 Patent on November 20, 2003 was discussed at length during the proceedings (See, e.g, Doc. 34, PAGEID #246-247), which concluded in 2007.  MTG specifically references this litigation in its Amended Complaint.  (Doc. 6, ¶ 14).  MTG filed its complaint for correction of inventorship in August of 2015.[3]  Therefore, even if MTG had properly stated a claim under Section 256, the Court finds that any claim would be barred by the doctrine of laches.

Therefore, Red Carpet's Motion to Dismiss Count One (seeking to have Sater included as an inventor of the '034 Patent) and Count Two (seeking to have the named inventor, Bob Lach, removed as a named inventor) is GRANTED.

### D.  Inequitable conduct

In Count Three, MTG brings a claim of inequitable conduct based on the failure of Red Carpet to acknowledge Sater's contribution to the '034 Patent to the Patent

---

[3]MTG has failed to offer anything to rebut the presumption of Sater's knowledge.  MTG argues that it is not required to do so at this stage of the proceedings because laches is an affirmative defense.

Office.

Inequitable conduct must be proven "by clear and convincing evidence that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed.Cir. 2013).  Claims of inequitable conduct are held to the heightened pleading standards of Fed. R. Civ. P. 9(b).  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).  "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)."  *Id.* at 1326-27.  Instead, "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  *Id.* at 1327.  "Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  *Id.* at 1328-29.  "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith."  *Id.* at 1329 n.5 (citing *Greenstone v. Cambex Corp.*, 975 F.2d 22, 26 (1st Cir. 1992)).

Here, MTG's allegations are that

34. LACH and RED CARPET had prior knowledge of the significance of the Sater design at the time of the filing of the '034 patent and throughout its prosecution.

10

35. LACH, through counsel did disclose the SATER design, but did it in such a way to draw attention away from its significance.

. . .

38. The duty of candor and good faith was violated by (1) LACH and his attorney knowingly failing to acknowledge SATER's substantial contribution to the design as a whole and failing to name him as an inventor.

39. The duty of candor and good faith was violated by (2) not acknowledging and disclosing the close relationship LACH had with the SATER design before the date of conception and the role the SATER design played in LACH's conception of the patented design.

40. The duty of candor and good faith was violated by (3) "hiding the ball" when disclosing the SATER reference by including it in several hundred pages of largely unrelated art;

41. The duty of candor and good faith was violated by (4) LACH,. falsely declaring under oath, under penalty of perjury that " [sic] I am the original, first, and sole inventor of the subject matter which is claimed and for which a design patent is sought when LACH knew that significant parts of the design were originally conceived by SATER.

(Doc. 6, PAGEID #21-22).

These allegations do not support a claim for inequitable conduct because MTG alleges that Lach and Red Carpet "did disclose the SATER design" to the PTO.  Such an allegation, even paired with the allegation that the disclosure was "in such a way to draw attention away from its significance" and that Lach and Red Carpet were "hiding the ball" by including the disclosure in several hundred pages, is inconsistent with a claim that information was withheld or misrepresented.  Moreover, "[b]ecause neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for materiality."  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292-93

(Fed. Cir. 2011). MTG has not alleged facts which would support a finding of but-or materiality. Therefore, Red Carpet's Motion to Dismiss MTG's claim of inequitable conduct is GRANTED.

### E. Unjust enrichment

In Count Four, MTG brings a claim of unjust enrichment based on Red Carpet "commercially exploit[ing] the design claimed in the '034 patent." (Doc. 6, ¶ 43).

"A successful claim of unjust enrichment requires that: (1) a benefit has been conferred by a plaintiff upon a defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Desai v. Franklin*, 177 Ohio App. 3d 679, 689, 895 N.E.2d 875, 882 (Ohio Ct. App. 2008).

To the extent that MTG claims that Sater should have been listed on the patent as a co-inventor, MTG would have no right to an accounting from Red Carpet. *Dee v. Aukerman*, No. C-3-84-144, 1987 WL 125075, at *2 (S.D. Ohio Mar. 27, 1987) (citing 35 U.S.C. §262, which provides: "In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use or sell the patented invention without the consent of and without accounting to the other owners.").

To the extent that MTG claims that Sater is the sole inventor, Red Carpet argues that MTG's claim for unjust enrichment is barred by the statute of limitations.

In Ohio, the six-year statute of limitations found in Ohio Revised Code § 2305.07 applies to unjust-enrichment claims. *Miami Valley Mobile Health Services, Inc. v. ExamOne Worldwide, Inc.*, 852 F.Supp.2d 925, 933 (S.D.Ohio 2012). An action for unjust enrichment arises when a party retains money or benefits which, in justice and

equity, belongs to another.  *Liberty Mut. Ins. Co. v. Indus. Comm.*, 40 Ohio St.3d 109, 532 N.E.2d 124 (Ohio 1988).  The statute of limitations for an unjust enrichment claim is not subject to equitable tolling or a discovery rule.  *Palm Beach Company v. Dun & Bradstreet, Inc.*, 106 Ohio App.3d 167, 665 N.E.2d 718, 723 (Ohio Ct.App. 1995).

In Case 51, this Court explained by way of background that in September of 2002, Sater sued Red Carpet for copyright infringement.  (Case No. 1:03cv51, Doc. 19, PAGEID # 2).  Sater alleged that Red Carpet's "Galaxies" line of products infringed Sater's copyrights.  (Id.)  Then, in November 2002, Red Carpet and Sater entered into a license agreement in which Red Carpet agreed to discontinue further commercialization of its Galaxies line, and also agreed to pay Sater a 10% royalty on sales.  (Id.)  This Court also explained that not long after Sater dismissed the lawsuit, another dispute arose over Red Carpet's Cosmix line:

> On January 8, 2003, Sater's attorney, Leonard DuBoff, faxed a letter to Red Carpet's attorney, Thomas Burger, which claimed that Red Carpet was breaching the settlement agreement because its Cosmix line of products was "virtually identical" to the works covered by the settlement agreement.  Complaint Ex. H.  DuBoff also requested Burger to call him immediately "so that we can discuss this matter and avoid the necessity of filing another lawsuit."  Id.
>
> Burger responded to DuBoff the same day.  In his letter, Burger stated that the Cosmix products were a new and different line with a different structure than the products covered by the license agreement.  Id. Ex. I.  Burger also informed DuBoff that Red Carpet had applied for a design patent on its design and that Red Carpet was confident that its application would be approved.  Burger also sent DuBoff an exemplar of the alleged infringing product.  Burger told DuBoff that he would be out of the office the entire following week, but closed by stating, "We are forwarding this product to you because Red Carpet wants to take all reasonable steps to resolve any potential disputes without litigation, if at all possible."  Id.
>
> . . .
>
> On January 14, 2003, DuBoff emailed Burger about the exemplar he had

received, stating that "we appear to disagree on whether the new Red Carpet piece is 'substantially similar' to Neil Sater's copyrighted work."

 . . .

In the meantime, apparently unbeknownst to Burger, other events were transpiring which prompted the filing of this lawsuit.  According to Paul Schenz, who works for Red Carpet in some unidentified capacity, during January 2003, Red Carpet was displaying its products at a trade show in Atlanta, Georgia.  Apparently, Sater and/or his agents were in attendance at the same show.  Sometime during the hours between the evening of Friday, January 10 and the Saturday, January 11, an unknown person or persons vandalized Red Carpet's booth at the trade show. Interestingly and coincidentally, the only products destroyed were Red Carpet's Cosmix wind sculptures.  None of its other wares were disturbed.  Schenz Aff. ¶ 6.  In addition, during the show, Red Carpet heard from some of its customers that Sater and/or his agents had been saying that Red Carpet was selling "illegal products" and that he was going to sue to put Red Carpet out of business.  Id. ¶ 7.

(Case No. 1:03cv51, Doc. 19, PAGEID # 3-5).  In light of this history between Sater and

Red Carpet, it is clear that any claim Sater had against Red Carpet arose before 2009.

Therefore, MTG's unjust enrichment claim is barred by the statute of limitations and Red

Carpet's Motion to Dismiss MTG's claim of unjust enrichment is GRANTED.

### III.  <u>CONCLUSION</u>

Based on the foregoing, it is hereby **ORDERED** that Plaintiff Red Carpet Studio's

Motion to Dismiss the Amended Complaint (Doc. 62) is **GRANTED**.

**IT IS SO ORDERED.**

  */s/ Michel R. Barrett*
JUDGE MICHAEL R. BARRETT