UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Red Carpet Studios,

    Plaintiff,

v.

Midwest Trading Group, Inc., *et al.,*

    Defendants.

Case No. 1:12cv501

Judge Michael R. Barrett

**MEMORANDUM OPINION**

This matter is before the Court upon Plaintiff Red Carpet Studio's Motion for Entry of Judgment Including a Determination of Total Profit to which Plaintiff is Entitled under 35 U.S.C. § 289 and Prejudgment Interest. (Doc. 110). Defendants Midwest Trading Group, Inc. ("MTG"), CVS Pharmacy Inc. ("CVS") and Walgreen Co. ("Walgreens") have filed a Response (Doc. 111); and Plaintiffs filed a Reply (Doc. 112).

**I.    BACKGROUND**

Plaintiff seeks to recover damages under Section 289 of the Patent Act, 35 U.S.C. § 289,[1] for the Defendants' infringement of the '034 Patent through sales of its

---

[1] As the Supreme Court has explained: "Section 289 of the Patent Act provides a damages remedy specific to design patent infringement." *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 432, 196 L. Ed. 2d 363 (2016). Section 289 provides that:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

35 U.S.C. § 289.

"Solar Spinner."2 Figures 1 through 9 from the '034 Patent are reproduced below:



(Doc. 1-1, PAGEID# 7; Doc. 33-2, PAGEID# 476-480). The following is an example of the Solar Spinner sold by Defendants:



The Court has granted summary judgment in favor of Plaintiff and found that Defendants Midwest Trading Group Inc. ("MTG"), Walgreen Company and CVS Pharmacy Inc. infringed the '034 Patent. (Doc. 100). The parties agree that two issues remain in this case: (1) determining the relevant "article of manufacture," and (2) calculating the "total profit" on that article of manufacture.

---

²Defendants explain that the accused products were marketed under different names. The Court has followed the lead of the parties and will refer to the products collectively as "Solar Spinner."

Plaintiff maintains that the relevant "article of manufacture" is the entire Solar Spinner as it was sold by Defendants. Plaintiff maintains that this Court should decide the second issue without a jury because it seeks disgorgement of profits, which Plaintiff maintains is an equitable remedy with no right to a jury trial.

Defendants maintain that the "article of manufacture" is the not the entire Solar Spinner, but only the decorative outer blades; and therefore, only a reasonable percentage of the overall profits in sales of the entire product should be attributed to the infringing article. Defendants also take issue with Plaintiff's calculation of "total profits." Finally, Defendants argue that the remaining issues should be decided by a jury.

II. **ANALYSIS**

A. **Jury Demand**

This Court has previously explained that Defendants did not make a jury demand in their Answers, and even though Plaintiff initially made a jury demand, it has withdrawn that demand. (Doc. 109, PAGEID# 2014). Plaintiff concedes that once a jury demand has been made, it cannot be withdrawn without consent of the parties. *Accord* Fed. R. Civ. P. 38(d) ("A proper demand may be withdrawn only if the parties consent.").

However, Plaintiff maintains that where no right to jury trial exists, a jury demand is inconsequential. As a general proposition, Plaintiff is correct. It is well-settled law that there is no right to jury trial in suits seeking only equitable relief. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709-11 (1999) (citing *Parsons v. Bedford*, 3 Pet. 433, 447, 7 L.Ed. 732 (1830)). Therefore, if Plaintiff is only seeking equitable relief, Plaintiff was not required to obtain Defendants' consent in order to withdraw its

3

jury demand. *Accord 3M Co. v. Mohan*, 482 Fed. Appx. 574, 578 (Fed. Cir. 2012) (citing *Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1341 (Fed. Cir. 2001); *see also Whitson v. Knox Cty. Bd. of Educ.*, 468 F. App'x 532, 537 (6th Cir. 2012) ("When subsequent events leave only equitable issues to be resolved, the right to a jury trial does not exist and is not preserved by the Seventh Amendment or Federal Rule of Civil Procedure 38."). Moreover, the Court, on motion or on its own, may find "that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). Therefore, as a preliminary matter, the Court must examine whether there is a right to a jury trial on the determination of damages under § 289.

B. **Right to jury trial**

Determining a damages award under § 289 "involves two steps. First, identify the 'article of manufacture' to which the infringed design has been applied. Second, calculate the infringer's total profit made on that article of manufacture." *Samsung Elecs. Co. v. Apple Inc.*, 137 S.Ct. 429, 434, 196 L.Ed. 2d 363 (2016). While neither the Court nor the parties were able to find authority which directly resolves the question of whether a jury or a judge must make this determination, there ample support for the conclusion that a claim for damages under § 289 is one for equitable relief.

To begin, "[i]t is well-settled that equitable relief includes monetary damages where required to afford complete relief." *Golden v. Kelsey-Hayes Co*., 73 F.3d 648, 661 (6th Cir. 1996). In reviewing a jury award of disgorgement of profits for trade secret misappropriation under Texas law, the Federal Circuit in *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics. America, Inc.*, provided an exhaustive analysis of the Seventh Amendment right to a jury trial for the disgorgement

jury demand. *Accord 3M Co. v. Mohan*, 482 Fed. Appx. 574, 578 (Fed. Cir. 2012) (citing *Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1341 (Fed. Cir. 2001); *see also Whitson v. Knox Cty. Bd. of Educ.*, 468 F. App'x 532, 537 (6th Cir. 2012) ("When subsequent events leave only equitable issues to be resolved, the right to a jury trial does not exist and is not preserved by the Seventh Amendment or Federal Rule of Civil Procedure 38."). Moreover, the Court, on motion or on its own, may find "that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). Therefore, as a preliminary matter, the Court must examine whether there is a right to a jury trial on the determination of damages under § 289.

B. **Right to jury trial**

Determining a damages award under § 289 "involves two steps. First, identify the 'article of manufacture' to which the infringed design has been applied. Second, calculate the infringer's total profit made on that article of manufacture." *Samsung Elecs. Co. v. Apple Inc.*, 137 S.Ct. 429, 434, 196 L.Ed. 2d 363 (2016). While neither the Court nor the parties were able to find authority which directly resolves the question of whether a jury or a judge must make this determination, there ample support for the conclusion that a claim for damages under § 289 is one for equitable relief.

To begin, "[i]t is well-settled that equitable relief includes monetary damages where required to afford complete relief." *Golden v. Kelsey-Hayes Co*., 73 F.3d 648, 661 (6th Cir. 1996). In reviewing a jury award of disgorgement of profits for trade secret misappropriation under Texas law, the Federal Circuit in *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics. America, Inc.*, provided an exhaustive analysis of the Seventh Amendment right to a jury trial for the disgorgement

remedy. 95 F.3d 1304, 1319-1325 (Fed. Cir. 2018). The court explained that part of this analysis included a determination of whether the claim, or a sufficient analogue, could have been brought in the English courts of law in 1791. *Id*. at 1319. The court determined that "for patent infringement, disgorgement of profits was not historically available at law." *Id*. at 1324. Ultimately, the court reached the conclusion that there was no right to a jury decision on the trade secret claim, but did so based on the "appropriate analogues" of patent, copyright, or trademark infringement claims. Because the remedy of disgorgement of profits for those claims is equitable, not legal, the court vacated a jury award for disgorgement of profits and remanded for a determination of the remedy by the trial court. *Id*. at 1325. *Accord Osborn v. Griffin*, 865 F.3d 417, 462 (6th Cir. 2017) (discussing generally the law of equitable remedies and stating "our understanding that an action seeking disgorgement of profits is equitable in nature is confirmed by the historical treatment of that remedy prior to the enactment of the Seventh Amendment.").[3]

---

[3] In discussing the origins in law and equity of the remedy for patent infringement, the Federal Circuit has made a brief, indirect reference to the equitable nature of a claim for damages under § 289. *Nike, Inc. v. Wal-Mart Stores, Inc*., 138 F.3d 1437, 1442 (Fed. Cir. 1998). The court explained that an early patent statute authorized the court in equity to award both the infringer's profits and compensatory damages. *Id*. at 1440. The court explained that later:

> With the 1952 codification of the patent law into Title 35, the general damages provision appears at § 284 and the additional provision for design patents appears at § 289. Section 284 as written did not state the 1946 Act's concept of recovering profits as an element of general damages, a purported ambiguity that was clarified in *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507, 84 S.Ct. 1526, 1543, 12 L.Ed.2d 457, 141 USPQ 681, 694 (1964). The Court interpreted § 284 as meaning that only the patentee's losses can be recovered, "without regard to the question whether the defendant has gained or lost by his unlawful acts," *thus removing the equitable remedy of the infringer's profits from recovery under § 284*.

*Nike, Inc. v. Wal-Mart Stores, Inc*., 138 F.3d 1437, 1442 (Fed. Cir. 1998) (emphasis added).

In addition, when addressing the remedy of disgorgement of profits for trademark infringement cases, courts have repeatedly held that disgorgement of profits is an equitable remedy that provides no right to jury trial. *See*, *e.g.*, *Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts*, 944 F.2d 1235, 1248 (6th Cir. 1991) (holding the defendant does not have a right to jury trial for Lanham Act claims where the complaint "requested only equitable relief; an injunction and disgorgement of profits."); *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 815 F. App'x 110, 112 (9th Cir. 2020) (concluding the district court did not err by striking the plaintiff's demand for a jury trial for disgorgement of profits under the Lanham Act); *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1359 (11th Cir. 2019) (explaining that "[w]e would also be remiss if we overlooked the [Supreme] Court's repeated statements, albeit in dicta, that the disgorgement of wrongful gains is equitable;" and concluding that "an accounting and disgorgement of a defendant's profits in a trademark infringement case is equitable in nature and does not carry with it a right to a jury trial."); *TrueNorth Companies, LC v. TruNorth Warranty Plans of N. Am., LLC*, No. 17-CV-31-LTS-KEM, 2019 WL 8301690, at *9 (N.D. Iowa June 3, 2019) ("TrueNorth is not entitled to a jury trial on its Lanham Act claim for unfair competition seeking only equitable relief, it should not be allowed to make an untimely demand as to that claim."); *see also Fair Isaac Corp. v. Fed. Ins. Co.*, 408 F. Supp. 3d 1019, 1031 (D. Minn. 2019) (denying jury determination of remedy of disgorgement in copyright infringement case).[4]

---

[4] Defendants cite to two cases in which the § 289 disgorgement of profits issue was given to the jury: *Apple Inc. v. Samsung Elecs.*, No. 11-CV-01846, 2018 WL 1586276 (N.D. Cal. Apr. 2, 2018) and *Columbia Sportswear N. Am. Inc. v. Serv. Innovative Accessories, Inc.*, No. 3:17-cv-01781, 2018 WL 1805102 (S.D Cal. Apr. 17, 2018). However, neither of these cases addressed the Seventh Amendment issue. In addition, the Court notes that under Federal Rule of Civil Procedure 39(c)(2): "In an action not triable of right by a jury, the court, on motion or on

Defendants argue that even if the determination under § 289 is for the court and not a jury, the alternative to a jury trial is a bench trial.  While "the right to jury trial is a constitutional one . . . no similar requirement protects trials by the court."  *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *see also Anhing Corp. v. Viet Phu, Inc.*, 671 F. App'x 956, 958 (9th Cir. 2016) (concluding that the district court did not err in denying request for a bench trial because plaintiff only sought the equitable relief of disgorgement of profits and an injunction).  Therefore, the Court finds it is not required to conduct a bench trial as part of its determination of Plaintiff's claim for damages under § 289.  Moreover, Defendants have not identified any evidence which the Court would need to make its determination and is not already before the Court, and, therefore, an evidentiary hearing is not required.

C. **Article of manufacture**

The Court now turns to the first step in calculating damages under § 289: identifying the article of manufacture.  As the Supreme Court has explained, "article of manufacture" has a "broad meaning:"

> An "article" is just "a particular thing." J. Stormonth, A Dictionary of the English Language 53 (1885) (Stormonth); *see also* American Heritage Dictionary, at 101 ("[a]n individual thing or element of a class; a particular object or item"). And "manufacture" means "the conversion of raw materials by the hand, or by machinery, into articles suitable for the use of man" and "the articles so made." Stormonth 589; *see also* American Heritage Dictionary, at 1070 ("[t]he act, craft, or process of manufacturing products, especially on a large scale" or "[a] product that is manufactured"). An article of manufacture, then, is simply a thing made by hand or machine.

*Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. at 435.  Courts have developed a four-

---

its own . . may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right, unless the action is against the United States and a federal statute provides for a nonjury trial."

factor test for purposes of determining the article of manufacture: "(1) the scope of the design claimed in the patent, including the drawing and written description; (2) the relative prominence of the design within the product as a whole; (3) whether the design is conceptually distinct from the product as a whole; and (4) the physical relationship between the patented design and the rest of the product." *Nordock, Inc. v. Sys., Inc.*, No. 11-CV-118, 2017 WL 5633114, at *4 (E.D. Wis. Nov. 21, 2017); *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2017 WL 4776443, at *11 (N.D. Cal. Oct. 22, 2017) ("*Remanded Samsung*").

In an earlier order, this Court adopted the following guidance for applying this four-factor test:

> The plaintiff normally bears the burden of persuasion on all issues, including damages. *See Schaffer v. Weast, 546 U.S. 49, 56 (2005); Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). The identification of the article of manufacture is part and parcel to damages under § 289. Thus, the court concludes that the plaintiff bears the burden of persuasion with respect to identifying the article of manufacture and proving the defendant's total profit from that article of manufacture. *Apple*, 2017 U.S. Dist. LEXIS 177199, at *90.
>
> However, once the plaintiff meets its initial burden of production with respect to the article of manufacture and the defendant's total profit on that article, if the defendant contends that the article of manufacture is something else, the defendant has the burden to produce evidence as to this alternative article of manufacture. The defendant also has the burden to produce evidence as to any deductions it believes are appropriate from the total profit identified by the plaintiff. *Apple*, 2017 U.S. Dist. LEXIS 177199, at *96–97 (citing *Henry Hanger & Display Fixture Corp. of Am. v. Sel–O–Rak Corp.*, 270 F.2d 635, 643 (5th Cir. 1959); *Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.*, 250 F. Supp. 2d 333, 341 (S.D.N.Y. 2003) *vacated in part on other grounds*, 90 Fed.Appx. 543 (Fed. Cir. 2004) (unpublished); *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 497 (D. Minn. 1980).

*Nordock*, 2017 WL 5633114, at *3.

As to the first factor, Plaintiff explains that the various views of the '034 Patent show that the patented design is intended to be applied to a kinetic sculpture with any one of a number of different environments, including one with a spherical ornament hanging in the middle.  Therefore, according to Plaintiff, the scope of the article of manufacture includes the optional ornament in the middle of the sphere which is depicted in Figures 6-9 in broken lines.[5]  Defendant argues this is contrary to Plaintiff's earlier concession in this case, recognized by the Court, "that the ornament hanging in the middle of Figures 6 through 9 of the Patent is a structure that is unclaimed and not part of the patented design."  (See Doc. 100, PAGEID# 1764 n.1).  Defendants also point out that Figures 1 through 5 of the '034 patent do not show an ornament in the middle of the product; and none of the figures show a functional item like a solar light.  Defendants explain that the solar light has value separate and apart from the outer blades.

The Court finds that when determining the scope of the claimed design, it need not disregard the optional ornament shown in the broken lines of the patented design drawings.  In *Remanded Samsung*, Samsung made the same argument which Defendants make now: that the "relevant article of manufacture does not include any part, portion, or component of a product that is disclaimed by the patent."  2017 WL

---

[5]Plaintiff cites to the USPTO's Manual of Examining Procedure ("MPEP"), to support its argument the article of manufacture may include the portions of the patented design depicted by broken lines:

> Structure that is not part of the claimed design, but is considered necessary to show the environment in which the design is associated, may be represented in the drawing by broken lines. This includes any portion of an article in which the design is embodied or applied to that is not considered part of the claimed design.

MPEP § 1503.02(III).

4776443, at *9. The court rejected Samsung's position, and noted that in remanding the case, the Supreme Court did not rule out the possibility that the relevant article of manufacture could be a multicomponent product. *Id*. at *9-10. The court repeated the Supreme Court's holding that "the term 'article of manufacture' is broad enough to embrace both a product sold to a consumer and a component of that product, whether sold separately or not." *Id*. at *9 (quoting 137 S. Ct. at 436). Later in the case, when reviewing the damages calculation of Apple's expert, the court again rejected the notion that unclaimed subject matter could not be considered as part of the analysis of the first factor:

> The "product as a whole" necessarily comprises the claimed and unclaimed subject matter. Thus, by stating that the scope of the claimed design provides insight into "how the design relates to the product as a whole," the Court's October 22, 2017 Order contemplated that evaluation of the first factor could include discussion of the relationship between the claimed design and the unclaimed subject matter described in the patent and depicted in the patent's figures. Moreover, interpreting the first factor—the only factor focused on the patent itself, as opposed to the defendant's infringing product—to preclude discussion of the relationship between the claimed design and unclaimed subject matter would be inconsistent with the other three factors, all of which consider the relationship between the design and the rest of the defendant's infringing product.

*Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2018 WL 1586276, at *5 (N.D. Cal. Apr. 2, 2018). Therefore, the scope of the claimed design includes the spherical ornament hanging in the middle of the sphere and shown in broken lines shown in Figure 6.

As to the second factor, Plaintiff argues that the patented design of the '034 Patent dominates the Solar Spinner product. Defendants argue that the marketing and packaging for the Solar Spinner prominently featured the solar light, which

10

demonstrates that the solar light had its own prominence to the product as a whole. However, the Court finds that regardless of the reference to the solar light on the marketing and packaging, it is the four-blade sculpture which predominates when viewing the Solar Spinner in its entirety. Because this sculptural element is the patented design of the '034 Patent, the second factor favors Plaintiff.

As to the third factor, Plaintiff argues the design of the '034 Patent is not conceptionally distinct from the Solar Spinner product and the two are instead integrally related. Defendants respond that there is evidence that the product was packaged, marketed, and sold principally as a solar light, which was labeled as being "Powered by the Sun." Defendants explain that this shows that the Solar Spinner is conceptually distinct from the patented design. The Court concludes that the design is not conceptually distinct from the product as a whole. If the four-blade design was divorced from the Solar Spinner product, the product would lose all of its sculptural qualities, would no longer "spin" and would only be a spherical ornament lit by the sun. Therefore, the third factor favors Plaintiff.

As to the fourth factor, part of the analysis of the physical relationship between the patented design and the rest of the product, includes "whether the design pertains to a component that a user or seller can physically separate from the product as a whole, and whether the design is embodied in a component that is manufactured separately from the rest of the product, or if the component can be sold separately." *Apple Inc.*, 2017 WL 4776443, at *19. Plaintiff explains that even though the Solar Spinner is shipped its box so that the sphere is detached from the outer four blades, the outside of the box shows the Solar Spinner product in its assembled form, with the sphere in the

11

middle, and does not show the parts disassembled. (See Doc. 110-3). Plaintiff also explains that the name of the product emphasizes its "spinning" nature and prior to assembly, there is no capability of spinning because it is the blades that create the capability for spinning. Furthermore, Plaintiff points out that Defendants have not produced any evidence that a customer separately purchased the spherical ornament from the four outer blades, either initially or as a replacement part, or that the outside structure was ever separately sold. (Doc. 110-1, Thomas Burger Dec. at ¶ 17). Therefore, the Court finds that even though a user or seller can physically separate the spherical ornament from the product as a whole, the spherical ornament is not sold separately. The Court concludes that this fourth factor favors Plaintiff.

Accordingly, the Court concludes that the article of manufacture includes the entire Solar Spinner product as sold by Defendants.

### D. Total profits

The second step of calculating damages under § 289 is to calculate the total profits that the infringer made from that article of manufacture. For the most part, the parties do not disagree on the method of calculating the total profits, but there is some discrepancy in the numbers used in the calculations.[6]

Plaintiff claims that the total profit is $286,768 for Walgreens; $132,000 for CVS; and $121,034 for MTG. Defendants respond that the profits should be $258,570.71 for Walgreens; $89,375 for CVS; and based on the evidence of a cost per unit figure of $3.60, the gross profits on MTG's sales of the Solar Spinner were $20,257.62 as to CVS

---

[6]There is also no dispute that under § 289, a design patentee "can recover the profits of not only the manufacturer or producer of an infringing article, but also the profits of other sellers in the chain of distribution." *Bergstrom v. Sears, Roebuck and Co.*, 496 F. Supp. 476, 496 (D. Minn. 1980).

and $82,980.60 as to Walgreens, for a total gross profit of $103,238.22. (Doc. 111-4, Bosco Declaration, ¶¶ 4-6).[7]

Over the course of discovery, the parties attempted to reach a stipulation with regard to these amounts. While they were unable to do so, the correspondence between the parties on this issue, along with the discovery exchanged and the depositions in the record, provides a basis for the Court's determination of total profits. The Court will now address the calculation of profits for each defendant.

1. **MTG**

As an initial matter, part of Plaintiff's calculations of total profits relies on a September 28, 2012 letter from MTG's in-house counsel James Bosco (Doc. 110-6, PAGEID# 2164) ("Bosco letter"). Defendants argue that this letter is settlement correspondence which cannot be considered under Federal Rule of Evidence 408.

The Sixth Circuit has held Rule 408 "exclude[es] factual admissions made in the course of settlement negotiations." *Eid v. St.-Gobain Abrasives, Inc.*, 377 Fed. App'x 438, 445 (6th Cir. 2010) (citing Fed. R. Evid. 408 advisory comm. notes (1972)). However, as Plaintiff points out, the Bosco letter is not identified as a communication made subject to Rule 408 and MTG produced the Bosco letter during the course of discovery.

While the letter references Plaintiff's settlement offer, the letter is not labelled as being protected by Rule 408. *See Doe v. Univ. of S.*, No. 4:09-CV-62, 2011 WL 13187184, at *4 (E.D. Tenn. July 8, 2011) (emails not rendered inadmissible by Fed. R.

---

[7]Defendants argue that these numbers for the overall product should be reduced by multiplying by 40% to correspond to the profits attributable to the outside blades. However, the Court has determined that the article of manufacture includes the entire Solar Spinner and therefore any such reduction is not warranted.

13

Evid. 408 where both of the individuals involved in these discussions are licensed attorneys who understand the requirements and implications of Fed. R. Evid. 408 and could have prevented future disclosure by easily labeling emails as Rule 408-protected settlement discussions). In addition, the Court notes that the document in the record shows that at some point, MTG added Bates labelling to the letter: "MTG 00000034-00000035." Moreover, the purpose for which Plaintiff relies upon the Bosco letter is to establish the number of units sold by Defendants. As this Court has explained, information "that is otherwise discoverable is not rendered inadmissible simply because it was presented during settlement negotiations." *Goddard v. Allegiance Administrators, LLC*, No. 2:19-CV-1506, 2021 WL 184644, at *9 (S.D. Ohio Jan. 19, 2021) (citing Fed. R. Evid. 408, Advisory Committee Notes (citing *Ramada Development Co. v. Rauch*, 644 F.2d 1097, 1107 (5th Cir. 1981)) ("[T]he Rule cannot be read to protect pre-existing information simply because it was presented to the adversary in compromise negotiations.")). Because the number of units sold pre-existed the settlement discussions and was otherwise discoverable, the Court finds that this information from the Bosco letter is not rendered inadmissible under Rule 408.

Defendants also argue that the letter refers to revenue from sales, not to profits, and therefore has no relevance. However, revenue is certainly part of the calculation of profits. While Plaintiff initially calculated MTG's profits based on MTD's sales to Walgreens, CVS, Groupon, and others, after MTG supplied its cost per unit number (Doc. 111-4 at PAGEID# 2266), Plaintiff has recalculated MTG's gross profits based on this number ($3.60 per unit). (Doc. 112-2, Revised Exhibit R). The Court finds that gross profits may be calculated based on "the most reasonable estimate of defendant's

14

per unit cost available to the Court." *Evriholder Prod. LLC v. Simply LBS Ltd. Co.*, No. 17CV4329, 2020 WL 7060336, at *9 (S.D.N.Y. Apr. 21, 2020).

To the show the number of units which MTG sold to Walgreens, Plaintiff relies on several documents in the record, including a "Walgreens Buying Confirmation." (Doc. 110-4 at PAGEID# 2130; Doc. 111-4 at PAGEID# 2265-2281). These documents show that MTG sold 72,150 units to Walgreens in two separate purchases of units. Defendants maintain that MTG only sold 61,604 units to Walgreens, but as Plaintiff points out that number only reflects the number of units sold by Walgreens, not the number of units MTG sold to Walgreens. Accordingly, the amount of MTG's gross profit attributable to units sold to Walgreens should be based on all 72,150 units.

Plaintiff accepts MTG's estimate that Walgreens paid $5.10 per unit for the first purchase of units, but Plaintiff points to evidence in the record which shows that Walgreens paid $4.00 per unit for the second purchase of units. (Doc, 110-4 at PAGEID# 2130; Doc. 110-6 at PAGEID# 2164).

As to the number of units which MTG sold to CVS, the number of units MTG sold to Groupon or "Others," and the per unit price, Plaintiff states that there is no dispute and the numbers come directly from documents produced in discovery by Defendants. (See Doc. 111-1 at PAGEID #2212; Doc. 110-5 at PAGEID #2145; Doc. 110-6 at PAGEID #2172-2173).

The total number of units sold by MTG (111,962) is used to calculate the total gross profits ($524,097). The total costs ($403,063) are subtracted from that number to arrive at a total profit number of $121,034 for MTG.

15

### 2. Walgreens

Plaintiff explains that in discovery, Walgreens responded that it purchased 61,604 units from MTG which it later sold for a total revenue of $572,751.11. As explained above, the 61,604 units sold by Walgreens were bought and sold in two separate groups. The first 35,970 units had a per unit cost of $5.10; but the second group of 25,634 units had a per unit cost of $4.00. The profit calculation based on these numbers is a total profit number of $286,768 for Walgreens.

### 3. CVS

Plaintiff explains that a fair approximation of CVS's total profit for infringement is as follows: $110,00,641 (actual profit from the sale of 20,353 infringing units) + $2,064 (actual profit from sale of additional 2,198 infringing units) + $19,438 (constructive profit for the sale of 4,259 "lost" infringing units) = $132,143. (Doc. 110-5 at PAGEID# 2153). Plaintiff rounds this number down to $132,000 "for the sake of simplicity." Defendants maintain CVS's total profit is $89,375.

Plaintiff takes issue with the total profit calculation by CVS because CVS cannot deduct from its total profit the amount it paid for infringing products it did not sell. Similarly, Plaintiff maintains that CVS cannot subtract the 4,259 units which CVS claims are "lost." Plaintiff cites *Beatrice Foods Co. v. New Eng. Printing & Lithographing Co.*, 899 F.2d 1171, 1175 (Fed. Cir. 1990) for the proposition that "[a]n infringer cannot destroy the evidence of the extent of its wrongdoing, and limit its liability to that which it failed to destroy." While there is no allegation that CVS destroyed these units, CVS was certainly responsible for accounting for them. Therefore, those units cannot be subtracted from the profit calculation. *Accord Gemtron Corp. v. Saint-Gobain Corp.*, No.

16

1:04-0387, 2008 WL 2859060, at *1 (W.D. Mich. July 22, 2008) ("However, where damages are uncertain due to an infringing party's failure to keep or preserve adequate records, the uncertainty must be resolved against the infringer.").

Plaintiff also maintains that CVS cannot deduct $22,616 of "other costs" (Doc. 110-5 at PAGEID #2151) without documenting those other costs. This is correct. As one district court has explained:

> after a plaintiff in a patent action submits admissible evidence of an infringer's gross profit (that is, its revenue less its cost of goods sold), it is the infringer's burden to submit admissible evidence to establish that other expenses and costs should be deducted from that profit. *Apple Inc. v. Samsung Elecs. Co.*, 2017 WL 4776443, at *15 (N.D. Cal. Oct. 22, 2017) ("[T]he defendant bears the burden of production on proving any deductible expenses from the amount of total profit proved by the plaintiff."); *Nordock, Inc. v. Sys., Inc.*, 2017 WL 5633114, at *3 (E.D. Wis. Nov. 21, 2017) (same, and collecting cases). *See also Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.*, 250 F. Supp. 2d 333, 340-41 (S.D.N.Y. 2003) ("For design patent cases, authority on the calculation of fixed expenses is scant, thus requiring the Court to use discretion.... By analogy, in copyright actions, the owner must first establish the infringer's gross profits, and then the infringer has the burden of proving deductible expenses, see 17 U.S.C. § 504, and the courts determine what expenses should be deducted."), vacated in part on other grounds, 90 F. App'x 543 (Fed. Cir. 2004).

*Evriholder*, 2020 WL 7060336, at *9. Because CVS did not present evidence of deductible expenses and costs, the $132,000 which Plaintiff has calculated as the total profit for CVS is correct.

In summary, Plaintiff is entitled to an award of the following amounts of total profits from Defendants: $286,768 for Walgreens; $132,000 for CVS; and $121,034 for MTG.

### E. Prejudgment interest

Plaintiff seeks an award of prejudgment interest up to April 14, 2020 based on

the prime interest rate, compounded quarterly.

There is no dispute that a court may award prejudgment interest on a total profit award under Section 289. *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1292 (Fed. Cir. 2002); *Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.*, 90 F. App'x 543, 547 (Fed. Cir. 2004). Defendants only maintain that the calculation of prejudgment interest is premature. However, now that the Court has resolved the issue of total profits, the calculation of prejudgment interest is appropriate.

The Federal Circuit has found that the use of prejudgment interest at the prime rate compounded quarterly was not an abuse of discretion. *Studiengesellschaft Kohle, MBH v. Dart Industries*, 862 F.2d 1564 (Fed. Cir. 1988). Plaintiff has calculated prejudgment interest in the following amounts: $114,113.55 for Walgreens; $49,383.13 for CVS; and $210,197.70 for MTG. However, these amounts are calculated as of the filing of Plaintiff's Motion on April 14, 2020. Plaintiff shall provide the Court with re-calculated amounts in order to permit the Court to enter final judgment.

### F. Post-judgment interest

Plaintiff also seeks post-judgment interest pursuant to 28 U.S.C. § 1961(a), which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The statute also provides that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." However, the Court finds that any calculation of post-judgment interest is premature at this time.

### III.     CONCLUSION

Based on the foregoing, Plaintiff Red Carpet Studio's Motion for Entry of Judgment Including a Determination of Total Profit to which Plaintiff is Entitled under 35 U.S.C. § 289 and Prejudgment Interest (Doc. 110) is **GRANTED**.  Plaintiff shall tender to the Court a proposed Order which includes both an award of total profits of $286,768 for Walgreens, $132,000 for CVS, and $121,034 for MTG; and a re-calculation of pre-judgment interest as of **March 31, 2021** to permit the entry of this Court's final order and the Clerk's judgment on that date.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
JUDGE MICHAEL R. BARRETT